UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

ABIYE S. WORKNEH,                   :

                                        :         MEMORANDUM AND

            Plaintiff,              :         ORDER

                                          :

            -against-             :         10-CV-3479 (WFK) (LB)

                                          :

PALL CORPORATION, MORVEN MCALISTER,     :
WEI BING DING, and WILLIAM WILSON,       :

                                          :

           Defendants.           :

-----------------------------------------------------------------------X

**KUNTZ, United States District Judge**

Plaintiff Abiye Workneh ("Plaintiff" or "Workneh") brings this action against his former employer, Pall Corporation ("Pall"), and three individual defendants, Morven McAlister ("McAlister"), Wei Bing Ding ("Ding"), and William Wilson ("Wilson") (collectively "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff, a black male of Ethiopian decent and former employee of Pall, asserts Defendants discriminated against him on the basis of his race and national origin, and retaliated against him for complaining about the alleged discrimination. Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated, this Court grants the motion for summary judgment by Defendants.

**I.    Factual Background**

Plaintiff commenced employment with Pall in June 1992 as a Laboratory Analyst. Defs.' Rule 56.1 St., at ¶ 1. His starting annual base salary was $23,000.00. *Id.* at ¶ 2. In September 1994, he was promoted from Laboratory Analyst to Senior Laboratory Analyst. *Id.* at ¶ 3. In December 1997, Plaintiff was promoted to Supervisor and, in January 2005, he was promoted to

Supervisor of the Validation (Chemistry) Laboratory. *Id.* at ¶¶ 4–5. In June 2005, Plaintiff was promoted to Senior Supervisor of the Validation (Chemistry) Laboratory. *Id.* at ¶ 6. During his tenure at Pall, Plaintiff was promoted four different times and received approximately twenty raises in his annual base salary. Defs.' Exs. B (Pl.'s Dep. Tr. 42:18–22); F (Job Titles and Salary History for Abiye Workneh). At the time of his resignation from Pall on February 3, 2011, his annual base salary was approximately $59,682.48. Defs.' Exs. F, W (Resignation letter, dated Feb. 8, 2011).[1]

In July 2005, Plaintiff sent an email to Steven Haas ("Haas"), then Vice President for Human Resources. Defs.' Ex. G (July 2005 Email). In the July 2005 Email, Plaintiff expressed he expected "things to change" in the "form of a promotion and the financial increase that comes along with it." *Id.* He stated his "salary [was] not a true reflection of [his] services that [he] provided throughout the years." *Id.* The Court notes Plaintiff received a promotion to Senior Supervisor of the Validation (Chemistry) Laboratory and salary increase on or about June 29, 2005—approximately one month before sending the July 2005 Email. Defs.' Ex. F. On July 22, 2005, Plaintiff met with Human Resources Generalist Toni Ardolino ("Ardolino"), Wilson (Plaintiff's direct supervisor), and McAlister (Wilson's direct supervisor), to discuss the contents of the July 2005 Email, Plaintiff's job title, and the goals Plaintiff needed to achieve to advance to the next level. Defs.' Rule 56.1 St., at ¶¶ 8–9, 12; Defs.' Ex. H (Memo to File, dated July 25, 2005). During the meeting, Ardolino reviewed Plaintiff's entire compensation history with him and compared it to other employees, their dates of hire, and their current salary levels. Defs.' Ex. H; Defs.' Rule 56.1 St., at ¶ 13. Plaintiff expressed "no issues with his pay at the moment," but

---

[1] The Court notes Plaintiff's annual base salary at the time of resignation may have been a higher amount of $60,577.72. Defs.' Ex. X (Comparative Data for Scientific Lab Personnel in Port Washington).

he felt "this new title, promotion and compensation is where he should have been four to five years ago and that Human Resources [had] failed him." Defs.' Ex. H. Ardolino wrote in the Memo to File that Plaintiff had not made any complaints to Human Resources before the July 2005 Email. *Id.*

Later that day, Plaintiff met separately with Haas. Defs.' Rule 56.1 St., at ¶ 14. Haas presented Plaintiff with a handwritten note on a document containing a typewritten list of goals Plaintiff received during the previous meeting that day. The handwritten note states: "If you deliver of the aforementioned goals satisfactorily and to the approval of senior management and you sustain continued satisfactory performance relative to your current title Sr. Supervisor and display through achievements required by your Supervisor, Morven M., we will review and consider granting the title of Ass't Lab Mgr. in the first ½ of 2006." Defs.' Ex. J. (Haas Note). Plaintiff testified his understanding of the handwritten note was the belief that "there was going to be a review of [his] performance within six months, and then they were looking to intend that there would be a promotion if [he] satisfactorily met [his] obligations." Pl.'s Dep. Tr. 146:8–15. Plaintiff acknowledged that the handwritten note did not establish the promise of a promotion, but that he would be considered for the promotion in the first half of 2006. *Id.* at 147:6–14.

Plaintiff received an overall rating of "Partially Meets Expectations" on his performance evaluation for the period November 12, 2005 to November 11, 2006. Defs.' Ex. K (Nov. 2006 Appraisal). He received a manager rating from Wilson of "Partially Meets Expectations" for Goal 1, to "understand and be capable of performing all supervisory responsibilities and work with minimum input from Laboratory Management." *Id.* Notably, Plaintiff rated himself as "Exceeds Expectations" for Goal 1. *Id.* Plaintiff received a rating of "Meets Expectations" for Goal 2, "Ensuring the laboratory meets all regulatory requirements particularly to the ISO9001

Standard." *Id.* Plaintiff rated himself as "Exceeds Expectations" for Goal 2. *Id.* Plaintiff received a rating of "Meets Expectations" for Goal 3, to "represent Laboratory management and interact with visiting customers as appropriate." *Id.* Plaintiff rated himself as "Exceeds Expectations" for Goal 3. *Id.* Plaintiff received a rating of "Partially Meets Expectations" for Goal 4, to "act as a project Manager;" Plaintiff indicated Goal 4 was not applicable. *Id.* Goal 5 was to "research, develop, standardize and implement new procedures/methodologies for laboratory projects; determine areas for improvement; determine how issues can be addressed." *Id.* Plaintiff received a rating of "Below Expectations;" Plaintiff did not rate himself for Goal 5. Plaintiff received a rating of "Below Expectations" for Goal 6, "Training on model solvents;" Plaintiff did not rate himself for Goal 6. *Id.* During his deposition, Plaintiff stated he did not see "eye to eye" with Wilson on the quality of his performance with respect to any of the performance goals established in the November 2006 Appraisal. Pl.'s Dep. Tr. 124:16–20.

On October 8, 2008, Plaintiff sent an email to Haas and Kathleen Moldenhauer, then Senior Vice President of Human Resources, stating he was "writing this letter because of what" he viewed as an "unjust and wrong approach towards [his] professional growth and upward movement within the company." Defs.' Ex. L (Oct. 2008 Email). He wrote, "[a]s a result of the continued inobjective assessment of my performance, which has translated into my stymied growth here, leads me to believe that I have been subjected to unfair, unjust and discriminatory practices." *Id.*

On October 23, 2008, Moldenhauer and Ardolino met with Plaintiff to discuss the October 2008 Email. Defs.' Rule 56.1 St., at ¶ 30; Defs.' Ex. M (Memo to File, dated Oct. 23, 2008). Moldenhauer addressed the November 2006 Appraisal and stated to Plaintiff he "was partially meeting expectations and it was specific as to what areas were not meeting

expectations." Defs.' Ex. M. Moldenhauer noted Plaintiff's perception of his job performance as compared with his manager's perception of his job performance demonstrate "there is a very wide gap in between these two perceptions." *Id.* Plaintiff stated the November 2006 Appraisal had been altered and he had a hard copy of the performance appraisal in its original state. *Id.* To date, Plaintiff has provided no evidence the November 2006 Appraisal was, in fact, altered. Moldenhauer also discussed Plaintiff's 2008 appraisal. She asked him "how it was possible that he spends 70% of his time supervising a Project Specialist who has been there for 6 years." *Id.* She advised Plaintiff Pall was not obligated to promote any employee. *Id.* Moldenhauer asked Plaintiff how he felt he had been treated unfairly or discriminated against. Plaintiff gave no response. *Id.* At the conclusion of the meeting, Moldenhauer stated she would review Plaintiff's personnel file and collect information as to his work history at Pall. Defs.' Rule 56.1 St., at ¶ 36.

On January 9, 2009, Moldenhauer and Ardolino met with Plaintiff to discuss Moldenhauer's review of Plaintiff's file. *Id.* at ¶ 37; Defs.' Ex. M. Moldenhauer asked Plaintiff how he was treated unjustly or discriminated against. Plaintiff responded he was not promoted while others, who had done far less work, were promoted. He stated he felt his compensation was low. Defs.' Ex. M. Moldenhauer told Plaintiff she saw no evidence of discrimination in his performance reviews or in her discussions with his managers. *Id.* She indicated there was still a need for development surrounding Plaintiff's lack of initiative. *Id.* Ardolino pointed out that Wilson had advised Plaintiff of certain development objectives he needed to address and that Workneh did not receive a promotion because those areas had not improved. *Id.*

On May 18, 2009, Plaintiff sent an email to Wilson, Moldenhauer, McAlister, and Rob Dickstein, then Senior Vice President of Pall. Ex. P (May 2009 Email). Plaintiff felt compelled "to once again raise the issue regarding [his] treatment [ ] at Pall because it has become apparent

that the advent of [his] unfortunate but actively sought departure form [sic] Pall is imminent."
*Id.* During his deposition, Plaintiff admitted the subject of his leaving Pall was not broached
until the May 2009 Email. Pl's Dep. Tr. 199:2–5; 200:3–22. Moldenhauer responded to the
May 2009 Email on June 28, 2009. Defs.' Ex. Q (June 2009 Email). She assured Plaintiff Pall
was not seeking his departure and there was no "tacit plan to disregard [his] complaints." *Id.*
She also stated "Pall does not tolerate any form of workplace discrimination or retaliation, and
based on my understanding of the facts, no such discrimination or retaliation against you has
occurred." *Id.*

In April 2009, Plaintiff received an email from Donald Auty with respect to certain open
expenses that exceeded sixty days (the "Auty Email"). Defs.' Rule 56.1 St., at ¶ 49. The open
expenses included charges from Doubletree Hotels, Avis Rent-A-Car, Wyndham Vacation
Resorts, and Ethiopian Market. Pl.'s Dep. Tr. 203:23–204:15. On May 4, 2009, Workneh
received a follow-up email from Wilson regarding the open expenses referenced in the Auty
Email. *Id.* at 204:21–205:23. Plaintiff does not dispute this email was the second time Wilson
had to speak with him about open expenses. *Id.* at 205:24–206:2.

On or about October 13, 2009, Plaintiff filed an administrative charge of discrimination
with the Equal Employment Opportunity Commission ("EEOC"). Defs.' Ex. R (Charge of
Discrimination). The Charge alleged Pall discriminated against Plaintiff on the basis of his race
and national origin, and retaliated against him in violation of Title VII. *Id.* Following its
investigation, the EEOC dismissed the Charge and issued a Notice of Right to Sue letter on April
29, 2010. Defs.' Ex. S (EEOC Letter, dated Apr. 29, 2010). The letter stated "[m]uch of the
evidence provided in the charge statement and rebuttal cannot be considered in the EEOC's
determination" because it is outside the 300-day jurisdictional time period. *Id.* The letter

6

concluded Plaintiff's claim that "job responsibilities were given to [him], and taken from a white male, without a corresponding pay adjustment [was] not indicative of race discrimination; the difference in [their] respective ranks [made them] unsuitable comparators . . . ." *Id.*

On November 12, 2009, Wilson sent Plaintiff his November 2009 Appraisal for final comments. Defs.' Rule 56.1 St., at ¶ 58. On November 13, 2009, Plaintiff responded to the email from Wilson and copied Moldenhauer and McAlister. The email stated: "I categorically and totally reject the evaluative value of this supposed statement." Defs.' Ex. U (Nov. 2009 Email). On December 8, 2009, Moldenhauer and Wilson met with Plaintiff to discuss the November 2009 Appraisal. Defs.' Rule 56.1 St., at ¶ 61. Wilson reviewed the November 2009 Appraisal with Workneh. *Id.* at ¶ 62. Plaintiff received an overall rating of "Partially Meets Expectations." Defs.' Ex. T (Nov. 2009 Appraisal). Plaintiff received a rating of "Below Expectations" for Goal 1, to "be able to train and take full responsibility of the Radiochemistry lab." *Id.* Plaintiff rated himself as "Exceeds Expectations" for Goal 1. *Id.* Plaintiff received a rating of "Below Expectations" for Goal 2, project leadership; Plaintiff rated himself as "Meets Expectations." *Id.* On December 9, 2009—the day after the meeting—Plaintiff sent an email to Wilson and Moldenhauer stating he would not enter his comments or sign the November 2009 Appraisal because no mechanism was offered or suggested to him "to mitigate the issue at hand." Defs.' Ex. V (Email from Workneh, dated Dec. 9, 2009). On February 8, 2011, Plaintiff submitted voluntarily a letter stating he was resigning from Pall "due to health reasons effective 5:00 pm Friday February 3, 2011." Defs.' Ex. W (Letter from Workneh, dated Feb. 8, 2011); Pl.'s Dep. Tr. 215:15–20.

Plaintiff filed the Complaint on July 29, 2010 asserting disparate treatment with respect to his race and national origin, as well as retaliation against him. Defs.' Ex. A (Compl.). He

asserted that during his tenure at Pall, he received promotions and salary increases "at a slower rate than those granted to Pall's non-African-American employees." *Id.* at ¶ 8. He "contends that this is a global problem at Pall, and that a comparative analysis of the progress of white versus African American employees with the same qualifications . . . reflects disparities in rates of growth and opportunities to progress." *Id.* With respect to his retaliation claims, Plaintiff alleged he was given "additional administrative responsibilities" in December 2008; meetings were "convened" in 2009 to "scrutinize his job performance;" his corporate charge card "came under scrutiny" in April 2009; and "extensive audits" of his "working day were undertaken by Wilson" in or about May and June 2009. *Id.* at ¶¶ 35–39.

## II.    Standard Of Law

### A. Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotations and citations omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

The Second Circuit has "emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996); *see Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir. 2000). However, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 466 (2d Cir. 2001). Therefore, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

### B. *Pro Se* Standard

The Court must read *pro se* complaints liberally and "interpret them to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal citations omitted). "However, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not support a cause of action." *Wright v. Krom*, No. 10-cv-3934, 2011 WL 4526405, at *2 (S.D.N.Y. Sept. 29, 2011) (Owen, J.) (internal quotations and citation omitted). While this Court abides by these standards, it notes Plaintiff's opposition

9

papers and Rule 56.1 Statement contain no citations to evidence, no exhibits, and generally provide this Court with minimal guidance or evidentiary support for his arguments.

### III.     Individual Liability Under Title VII

Plaintiff's claims of discrimination against each of the Individual Defendants are dismissed because there is no individual liability under Title VII. *See, e.g., Lore v. City of Syracuse,* 670 F.3d 127, 169 (2d Cir. 2012); *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 377 (2d Cir. 2003); *Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir. 2000)(*per curiam*); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998). The Second Circuit has held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka,* 66 F.3d at 1313. Accordingly, all claims against Individual Defendants McAlister, Ding, and Wilson are dismissed as a matter of law.

### IV.     Discrimination Claims Pre-Dating December 17, 2008

Plaintiff's claims of discrimination prior to December 17, 2008 are time-barred. The filing of a charge of discrimination with the EEOC is a prerequisite to filing a Title VII complaint in federal court. 42 U.S.C. § 2000e-5(b). In New York, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct. *Ragone v. Atl. Video at the Manhattan Ctr.,* 595 F.3d 115, 126 (2d Cir. 2010). The 300-day period serves as a statute of limitations, and claims regarding acts that occurred more than 300 days prior to the employee's initiation of administrative review are time-barred. *Id.* Because Plaintiff filed his charge with the EEOC on October 13, 2009, claims of discrimination that are predicated on conduct before December 17, 2008—300 days prior to filing the EEOC charge—are time-barred.

Plaintiff has not and cannot argue the statute of limitations is expanded based on a "continuing violation" theory to encompass alleged discriminatory acts prior to December 17, 2008. "To trigger the continuing violation doctrine when challenging discrimination, the plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009) (internal quotations and citation omitted). The Supreme Court has made clear that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Specifically, promotion and compensation decisions are "discrete acts" that do not trigger the continuing violation exception. *Id.* at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."); *Gross v. Nat'l Broad. Co., Inc.*, 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002) (Scheindlin, J.) ("[A]lleged failures to compensate adequately, transfers, job assignments and promotions cannot form the basis for a continuing violation claim."). Accordingly, Plaintiff's claims of discrimination pre-dating December 17, 2008 are dismissed. The following claims of discrimination are not dismissed because Plaintiff alleges they occurred after December 17, 2008: Plaintiff was assigned additional administrative responsibility in December 2008; meetings were held in 2009 to "scrutinize his job performance;" his corporate charge card was scrutinized in April 2009; and his work was audited in or around May and June 2009. Compl. ¶¶ 36–39.

## V.    Title VII Discrimination Claims

Title VII of the Civil Rights Act of 1964 forbids employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court of the United States set forth a three-step burden-shifting analysis for courts to apply when analyzing claims of discrimination under Title VII. First, a plaintiff must establish a *prima facie* case of discrimination, *McDonnell Douglas Corp.*, 411 U.S. at 802, by demonstrating: (1) "membership in a protected class;" (2) "qualification for the position;" (3) "adverse employment action;" and (4) "circumstances giving rise to an inference of discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). "Although the burden of establishing a *prima facie* case is not onerous, and has been frequently described as minimal, the Second Circuit has also noted that a jury cannot infer discrimination from thin air." *Stafford v. N.Y. Presbyterian Hosp.*, No. 06-cv-2150, 2011 WL 1131104, at *5 (E.D.N.Y. Mar. 28, 2011) (Vitaliano, J.) (internal quotations and citations omitted).

If a plaintiff establishes a *prima facie* case of discrimination, the burden "then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802; *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "This burden is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the employer proffers such a reason, the presumption of discrimination "drops out of the picture," and the plaintiff bears the burden of demonstrating "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (internal quotations and

citations omitted). As the *McDonnell Douglas* framework requires, Plaintiff first must satisfy his burden of establishing a *prima facie* case of discrimination.

### A. Failure To Promote

Plaintiff alleges he was not promoted to the position of Assistant Manager or Manager because of his race and national origin in violation of Title VII. His assertion is premised on his "belief" that other white employees were advancing while he was not. Pl.'s Dep. Tr. 84:9–85:16; 155:12–25; 165:1–4. To establish a *prima facie* case of discrimination for failure to promote, a plaintiff must demonstrate: (1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer was seeking applications; (3) he suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination. *Arroyo v. N.Y. Downtown Hosp.*, No. 07-CV-4275, 2010 WL 3861071, at *4 (E.D.N.Y. Sept. 28, 2010) (Dearie, J.) (internal citation omitted).

Here, Plaintiff admits he never applied to the position of Assistant Manager, Manager, or any other promotional position vacancy. Pl.'s Tr. 157:19–25. Rather, Plaintiff alleges generally that he was not promoted while other employees were promoted. Such vague allegations are insufficient to substantiate a failure to promote claim. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) ("We read *McDonnell Douglas* and *Burdine* generally to require a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested a promotion."). There is no evidence in the record that Plaintiff applied for an open position of Assistant Manager or Manager. Pl.'s Dep. Tr. 157:19–25.

Assuming *arguendo* Plaintiff applied for the position of Assistant Manager or Manager, his failure to promote claim is dismissed because he has not met his *prima facie* burden of

13

establishing he was qualified for either position. Plaintiff's only basis for demonstrating he was qualified for the position rests on his personal belief that he was entitled to such promotion. Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summ. J. Dismissing the Compl. ("Defs.' Mem."), at 12–13. The Second Circuit holds that in determining whether a plaintiff has met his *prima facie* burden of demonstrating he was qualified for a position, "being 'qualified' refers to the criteria the employer has specified for the positions," and a plaintiff's subjective belief he is qualified will not suffice. *Williams v. R.H. Donnelly Corp.*, 368 F.3d 123, 127 (2d Cir. 2004) (internal quotations and citation omitted). Here, Plaintiff's performance reviews as well as the testimony of Wilson and Moldenhauer establish Plaintiff was not promoted to the position of Assistant Manager or Manager because his inadequate job performance did not merit a promotion to those positions.

Plaintiff met with Wilson, Ardolino, and McAlister in 2005 to discuss his job performance and his expectation of a promotion. Defs.' Ex. H. He also met with Haas to discuss the goals he needed to achieve in order to be promoted. *Id.* Nevertheless, the November 2006 Appraisal indicated he was only "Partially Meeting Expectations." Defs.' Ex. K. It was clear to Plaintiff and Pall management that there was a disparity between Plaintiff's perception of his job performance and his supervisor's perception of his performance. Defs.' Exs. H, J, K, T; Pl.'s Dep. Tr. 139:20–140:24. Furthermore, Plaintiff was advised explicitly that he was not promoted due his failure to improve upon the developmental objectives and goals identified in his performances reviews. Defs.' Ex. M; Pl.'s Dep. Tr. 192:16–193:5.

Wilson testified that Plaintiff lacked the managerial skills necessary to be considered for a promotion and exhibited performance issues, such as a failure to timely file expense reports. Defs.' Ex. C (Wilson Dep. Tr. 222:14–224:3). While Plaintiff "basically met expectations for

doing a satisfactory job" in his then-position of Senior Supervisor, he was not "acting on initiatives; taking over some new ideas; being innovative; doing things above and beyond." *Id.* at 171:21–172:9. According to Wilson, Plaintiff's inadequate job performance did not justify a further promotion. *Id.* Moldenhauer testified that management did not share Plaintiff's perception concerning the quality of his job performance or consideration for a promotion. Defs.' Ex. N (Moldenhauer Dep. Tr. 105:11–17; 108:19–25). Accordingly, Plaintiff has not established he was qualified for the position of Assistant Manager or Manager. *See Arroyo*, 2010 WL 3861071, at *4.

Even if Plaintiff were qualified for the position, no reasonable juror could conclude that Defendants' decision not to promote him to Assistant Manager or Manager was racially motivated. Keeping the *de minimis* standard in mind and drawing all reasonable inferences in favor of Plaintiff, the Court finds Plaintiff has not alleged sufficiently discriminatory animus by Defendants based on race or national origin. Plaintiff has presented only bare, unsubstantiated allegations that Defendants discriminated against him because of his race and national origin, and "unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *superseded by statute on other grounds as stated in Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006) (Sweet, J.); *Schwartz v. York College,* No. 06-cv-6754, 2011 WL 3667740, at *7 (E.D.N.Y. Aug. 22, 2011) (Mauskopf, J.) ("Plaintiff's subjective opinion in his own superior worth does not create a genuine issue of material fact.").

Plaintiff is unable to recollect any facts or events through the period of 2011 that demonstrate he was the subject of discrimination. During his deposition, Plaintiff was asked if he had any facts demonstrating he was the subject of race discrimination in the period through

December 31, 2007. Plaintiff could not cite a single fact suggestive of race discrimination. Pl.'s Dep. Tr. 156:7–13. Plaintiff was asked if anything occurred during 2008 that he regarded as a form of race discrimination. Plaintiff responded, "I would think the continuous treatment of me, I took as being discriminatory." *Id.* at 156:14–19. When asked to be more specific, Plaintiff stated "I have no recollection." *Id.* at 157:1–4. Plaintiff was asked if any discriminatory acts occurred during 2009. Plaintiff had no recollection. *Id.* at 157:8–10. When asked about any events in 2010, Plaintiff stated his performance reviews, undue scrutiny of his work, "trying to make my standpoint difficult" were indicative of discrimination. Plaintiff admitted he could not state with "any specificity was [sic] has transpired." *Id.* at 157:11–18.

Rather, Plaintiff's claims are based wholly on his personal opinion that his lack of progress at Pall is attributed to discrimination on the basis of his race and national origin. He believed that white employees were being promoted while he was not. *Id.* at 85:9–86:3. "It was [his] belief there was a subtle way of discriminating against [him]" by not promoting him or compensating him at a level to which he felt entitled. *Id.* at 155:12–156:6. Plaintiff had a "feeling" that Wilson and McAlister were colluding to discriminate against him based on his race because they gave him "bad" performance reviews. *Id.* at 161:16–24. Notably, Plaintiff provides no examples of specific incidents that caused him to have this "feeling." Plaintiff testified he had a "sense" Defendants had a plan to "orchestrate his departure" from Pall even though he conceded the subject of his departure did not come up until the May 2009 Email, which he wrote and sent. Plaintiff admitted he was not fired and he was not threatened with termination, but he had a "feeling" that he would be fired. *Id.* at 198:3–200:22. Plaintiff is unable to proffer a single, discrete act of discrimination that may give rise to a *prima facie* inference of discrimination. *See Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996)

(plaintiff's "attempts to show pretext by asserting her personal belief that she was the most qualified person for the various positions" did not establish defendants' proffered reasons were pretextual).

In fact, three black employees at Pall held positions of Assistant Manager or Manager and were more highly compensated than Plaintiff. Defs.' Ex. X. The Court finds this evidence indicative of a finding that race or national origin was not a factor in any promotion or compensation decisions pertaining to Plaintiff. Accordingly, Plaintiff's failure-to-promote claims are dismissed because he has not met his *prima facie* burden of establishing that he applied and was qualified for the desired positions.

### B. Compensation

Plaintiff alleges Defendants discriminated against him on the basis of race and national origin by not granting him a salary increase to which he believes he was entitled. To establish a *prima facie* case of discrimination in compensation, a plaintiff must demonstrate: (1) he is a member of a protected class; (2) he was paid less than similarly situated non-members of his protected class for work requiring substantially the same responsibility; and (3) there is evidence of discriminatory animus. *Arroyo*, 2010 WL 3861071, at *3 (internal quotations citation omitted).

Defendants argue Plaintiff has not produced sufficient evidence to meet his *prima facie* burden that he was paid less than employees sharing similar employment characteristics as he. "[W]here a plaintiff seeks to make out a case of discrimination by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that [he] shared sufficient employment characteristics with that comparator so that they could be considered similarly situated." *Russell v. Cnty. of Nassau*, 696 F. Supp. 2d 213, 233–235 (E.D.N.Y. 2010)

17

(Hurley, J.) (internal quotations and citation omitted). Although Plaintiff seeks to compare his salary to that of a Pall employee named Frank Pecci ("Pecci"), the record is void of evidence that Pecci received a greater salary increase than Plaintiff did or that he is otherwise similarly situated to Plaintiff for the purpose of comparing salaries. Pl.'s Dep. Tr. 75:14–17; 76:17–19. Plaintiff has not met his *prima facie* burden of demonstrating that he was similarly situated to Pecci, or any other Pall employee.

Furthermore, Plaintiff received approximately twenty raises in his annual base salary during his tenure at Pall. Defs.' Ex F; Pl.'s Dep. Tr. 42:18–22. When Plaintiff began working at Pall, his annual base salary was $23,000. Defs.' Ex F. At the time of his resignation, his annual base salary was $59,682.48. *Id.* As discussed *supra*, Plaintiff has not established he applied and was qualified for the position of Assistant Manager or Manager. Therefore, Plaintiff was not compensated at the level of an Assistant Manager or Manager.

Finally, as discussed *supra,* Plaintiff provides no evidence to support his claims that he was underpaid on the basis of his race or national origin. Defendants have articulated legitimate, non-discriminatory reasons for not promoting Plaintiff to Assistant Manager or Manager, and compensating him accordingly. Plaintiff failed to put forth evidence to suggest Defendants' explanations for not compensating him at a higher level are due to anything other than his inadequate job performance. Since Plaintiff has not identified any evidence which would demonstrate Defendants' proffered reasons are pretextual, the Court dismisses Plaintiff's compensation discrimination claims.

## VI.    Retaliation Claims

Title VII "forbids an employer to retaliate against an employee for, *inter alia,* complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester*

18

*Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)). To establish a claim for retaliation, a plaintiff must show: (1) he participated in a protected activity known to the defendant; (2) he suffered a materially adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse action. *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007). Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*. *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).

The first element requires Plaintiff took "action ... to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). Defendants do not dispute Plaintiff engaged in protected activity by complaining to Pall management about his alleged unfair treatment on multiple occasions and filing a discrimination charge with the EEOC on or about October 13, 2009. The dispute as to Plaintiff's retaliation claim centers on whether Plaintiff suffered a "materially adverse employment action." To show that he suffered a "materially adverse employment action," a plaintiff alleging retaliation "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations and citation omitted). Plaintiff claims that following his internal complaints and EEOC complaint, he was retaliated against in various ways. First, Plaintiff asserts that, in December 2008, he received additional administrative responsibilities but was not given a salary increase for this work. Compl. at ¶ 36. Second, Plaintiff alleges that, in 2009, Wilson and Ardolino "convened as many as six (6) meetings with Mr. Workneh to scrutinize his job performance, and even his daily schedule." *Id.* at ¶ 37. Third, in April 2009,

19

Plaintiff alleges his corporate charge card came under "increased scrutiny." *Id.* at ¶ 38. Finally, Plaintiff alleges that, in or about May and June 2009, "Wilson undertook complete extensive audits of [his] working day." *Id.* at ¶ 39.    Increased responsibilities and excessive scrutiny, without more, do not constitute an adverse employment action. *Dauer v. Verizon Commc'ns. Inc.,* 613 F. Supp. 2d 446, 461 (S.D.N.Y. 2009) (Gardephe, J.) (observing that "[c]ourts in this circuit have found that reprimands . . . and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation," and "[plaintiff] offers no evidence of such negative results here") (internal quotations and citation omitted); *Hill v. Rayboy-Brauestein,* 467 F. Supp. 2d 336, 355 (S.D.N.Y. 2006) (Karas, J.) ("micro-management" and "excessive scrutiny" were not adverse employment actions, particularly where plaintiff's only evidence of disparate treatment was "her own perception that she was treated differently"). "Although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions." *Hall v. N.Y. City DOT,* 701 F. Supp. 2d 318, 336 (E.D.N.Y. 2010) (Matsumoto, J.) (internal quotations and citation omitted).

In fact, the record shows that what Plaintiff characterized as increased scrutiny were actions taken by Pall management to address Plaintiff's complaints of unfair treatment and discrimination, evaluate and improve his job performance, and monitor his outstanding charges made on a corporate charge card. The record indicates two in-person meetings occurred in 2009. Both meetings were in direct response to emails sent by Plaintiff to Pall management complaining of unfair treatment and discrimination. Plaintiff attended a meeting on January 9, 2009 with Moldenhauer and Ardolino to discuss Moldenhauer's review of Plaintiff's employment file in response to the October 2008 Email. Defs.' Ex. M. On December 8, 2009,

Plaintiff met with Moldenhauer and Wilson to discuss Plaintiff's November 2009 Email and November 2009 Appraisal. Defs.' Rule 56.1 St., at ¶ 61. Hence, Plaintiff's emails complaining of unfair treatment constituted a legitimate, non-retaliatory reason for the two meetings in 2009. Likewise, the increased scrutiny over his corporate charge card was a result of Plaintiff's failure to timely file expense reports. Indeed, Plaintiff concedes that he was delinquent in his payments for charges made on his Pall corporate charge card. Therefore, Plaintiff cannot establish a *prima facie* case of retaliation because the retaliatory conduct he refers to does not constitute materially adverse employment actions in the context of a retaliation claim.

Assuming *arguendo* Plaintiff suffered a materially adverse employment action, his retaliation claim still fails because he has not produced evidence of a causal connection between his protected activity and alleged adverse employment actions. The Court accepts Defendants' explanation of the legitimate non-retaliatory reasons for the alleged adverse employment actions. Therefore, the burden shifts back to Plaintiff to present evidence establishing that it is more likely than not Defendants' decisions were motivated, at least in part, by an intent to retaliate against him. A plaintiff may show causal connection indirectly by demonstrating temporal proximity between the protected activity and the retaliation, or directly through evidence of "retaliatory animus directed against a plaintiff by the defendant." *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987). However, it is well-settled that temporal proximity alone is insufficient as circumstantial evidence of causation. *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (*per curiam*) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."); *Simpson v. New York State Dep't of Civil*

*Servs.*, 166 Fed. App'x. 499, 502 (2d Cir. 2006) (even where a *prima facie* case can be established through temporal proximity, "without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext"). Here, Plaintiff provides no direct evidence of retaliation sufficient to establish a causal nexus between his discrimination claims and alleged adverse actions. And temporal proximity, without more, is insufficient to create an inference of retaliation. Therefore, the Title VII retaliation claims are dismissed.

## VII. Conclusion

Defendants have made a *prima facie* showing of entitlement to judgment as a matter of law. Plaintiff failed to raise a triable issue of fact as to his Title VII claims of discrimination on the basis of race and national origin. Accordingly, this Court GRANTS the motion for summary judgment in favor of Defendants and DISMISSES the complaint in its entirely with prejudice.

**<u>SO ORDERED</u>**

Dated: Brooklyn, New York
      October 11, 2012

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge